UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                              PLAINTIFF

vs.                                                                                        3:19CR-8-DJH

BRANDON WOOD                                                                DEFENDANT

*Filed electronically*
**RESPONSE TO MOTION FOR COMPASSIONATE RELEASE**

Brandon Wood moves the Court to release him from his 70-month prison sentence.

Wood bases his motion on the coronavirus pandemic and his fear that he will contract the

disease.

For the reasons discussed more fully below, the Court should deny Wood's motion. He

does not claim that he is infected with the coronavirus.   He does not show that he has a greater

risk of contracting the disease in prison than he would if he was released or that the Bureau of

Prisons could not treat him effectively if he had coronavirus.   The fact of the coronavirus

pandemic is simply not a basis for compassionate release.   In addition, Wood stands convicted

of a serious crime involving the sexual exploitation of a minor.   His release so soon into the 70-

month sentence imposed by this Court would undermine the 18 U.S.C. § 3553(a) sentencing

factors.

**BACKGROUND**

Law enforcement officials became aware of Wood's criminal conduct while investigating

allegations of sexual misconduct by individuals involved with the Louisville Metro Police

Department (LMPD) Explorer Program.   Wood first participated in the program as an Explorer.

Once he reached the required age for employment as a police officer with LMPD, he applied and

was hired as a sworn officer.   Later, Wood acted as an advisor for the Explorer Program.

Wood met John Doe 1 through the Explorer Program during a camp held in Bullitt County, Kentucky.   At the time, John Doe 1 was over the age of 16, but under the age of 18. He was involved with the Explorer Program through another police department in the Commonwealth of Kentucky.   Wood was over the age of 18, an LMPD Officer, advisory with the LMPD Explorers Program, and counselor at the camp.

Between 2011 and 2012, while in Jefferson County, Kentucky, Wood used a facility and means of interstate commerce, that is, the Internet, to communicate with John Doe 1.   The communications occurred after the camp had concluded.   Wood communicated with John Doe 1 *via* Facebook and other social media.   During the course of the online communications, Wood attempted to persuade, induce and entice John Doe 1 to engage in sexual activity for which a person may be charged with a criminal offense.   However, in-person sexual activity did not occur between the two until after John Doe 1 turned 18.

Wood pled guilty to a single-count felony Information.   The Information charged him with attempted online enticement – in violation of 18 U.S.C. § 2422(b).   Wood pled guilty to the charge *via* a Fed. R. Crim. P. 11(c)(1)(C) written Plea Agreement.   The Plea Agreement called for a 60-month sentence (60 months below the applicable statutory mandatory minimum).

This Court initially rejected the Plea Agreement and required the parties to provide additional briefing.   Later, the Court accepted the plea of guilty and imposed a sentence of 70 months' imprisonment followed by a 10-year term of Supervised Release.

**ARGUMENT**

I.     <u>Exhaustion of administrative remedies</u>.

Defendants may move the courts to reduce their sentences for "extraordinary and compelling reasons."   18 U.S.C. § 3582(c)(1)(A).   But the statute imposes a condition precedent.   Before defendants can move for a reduced sentence, they must "fully exhaust all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ."   That requirement is jurisdictional or is at least a mandatory processing rule that the United States raises here.   Wood exhausted his administrative remedies, as evidenced the copy of the Warden's letter provided to the Court by Wood.

While Congress indisputably acted in the First Step Act to expand the availability of compassionate release, it expressly imposed on inmates the requirement of initial resort to administrative remedies.   And this is for good reason: The Bureau of Prisons conducts an extensive assessment for such requests. *See* 28 C.F.R. § 571.62(a); BOP Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g), available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf.   As the Procedures reflect, the Bureau of Prisons completes a diligent and thorough review, with considerable expertise concerning both the inmate and the conditions of confinement.   Its assessment will always be of value to the parties and the Court.

That remains true in the present crisis.   Wood's concerns are certainly valid.   This

3

Court, like all citizens, is vividly aware that coronavirus is a nefarious illness, which has infected large numbers of people and caused many deaths in a short period of time.   The Bureau of Prisons has accordingly taken significant measures in an effort to protect the health of the inmates in its charge.   The Bureau began planning for potential coronavirus transmissions in January 2020.   At that time, the agency established a working group to develop policies in consultation with subject matter experts in the Centers for Disease Control (CDC), including by reviewing guidance from the World Health Organization (WHO).   On March 13, 2020, the Bureau announced that it was implementing the Coronavirus (COVID 19) Phase Two Action Plan ("Action Plan") in order to minimize the risk of COVID-19 transmission into and inside its facilities. The Action Plan comprises many preventive and mitigation measures, including the following: all incoming inmates are screened, and staff are regularly screened; contractor visits are limited to essential services, while nearly all attorney, social, and volunteer visits have been suspended; inmate movements between facilities have been extremely limited; and institutions are taking additional steps to modify operations to maximize social distancing.   The Bureau has taken further steps as events require, including confining all inmates to their living quarters for a fourteen-day period beginning on April 1, 2020, in order to mitigate any spread of the disease. Many additional details are available at the BOP website, www.bop.gov.

        In addition, in recent days, the Bureau has been granted wider authority to designate inmates for home confinement in its toolkit of available measures.   On March 26, 2020, the Attorney General directed the Director of the Bureau of Prisons, upon considering the totality of the circumstances concerning each inmate, to prioritize the use of statutory authority to place prisoners in home confinement.   That authority includes the ability to place an inmate in home

confinement during the last six months or 10% of a sentence, whichever is shorter, *see* 18 U.S.C. § 3624(c)(2), and to move to home confinement those elderly and terminally ill inmates specified in 34 U.S.C. § 60541(g).   Further, § 12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, enacted on March 27, 2020, permits the Bureau of Prisons, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau of Prisons, to "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate."   On April 3, 2020, the Attorney General gave the Director of the Bureau of Prisons the authority to exercise that discretion, beginning at the facilities that thus far have seen the greatest incidence of coronavirus transmission.

Unfortunately and inevitably, some inmates have become ill, and more likely will in the weeks ahead.   But the solution is not to exclude the Bureau from reviewing applications for compassionate release.   There are many challenging factors to consider during this unprecedented pandemic, and the Bureau should have the opportunity to assess those factors during the statutorily required review period.   For example, notwithstanding the current pandemic crisis, the Bureau must carry out its charge to incarcerate sentenced criminals to protect the public.   It must consider the effect of a mass release on the safety and health of both the inmate population and the citizenry.   It must marshal its resources to care for inmates in the most efficient and beneficial manner possible.   It must assess release plans, which are essential to ensure that a defendant has a safe place to live and access to health care in these difficult times.   And it must consider myriad other factors, including the availability of transportation for

inmates (at a time that interstate transportation services often used by released inmates are providing reduced if any service), and of supervision of inmates once released (at a time that the Probation Office has necessarily cut back on home visits and supervision).

For all of those reasons, the Bureau is best positioned to determine the proper treatment of the inmate population as a whole, taking into account both individual considerations based on an inmate's background and medical history, and more general considerations regarding the conditions and needs at particular facilities.   The provision of § 3582(c)(1)(A) prioritizing administrative review therefore makes sense not only in the ordinary case, but also at this perilous time.   As the Third Circuit said, "[g]iven BOP's shared desire for a safe and healthy prison environment, we conclude that strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added--and critical--importance."   *United States v. Raia*, No. 20-1033, 2020 WL 1647922, *2 (3d Cir. April 2, 2020).   Thus, even if this Court could ignore the mandatory exhaustion requirement, which it cannot, it would be imprudent to prevent the Bureau of Prisons from engaging in that review.   In the instant case, the Warden reviewed Wood's request and denied it.

II.      The coronavirus pandemic alone is not a basis for compassionate release.

A court may only grant compassionate release based on an individual defendant's "extraordinary and compelling reasons," which the defendant has the burden of showing.   *See United States v. Hamilton*, 715 F.3d 328, 327 (11th Cir. 2013).   In addition, a court must consider the factors set forth in 18 U.S.C. § 3553(a) and determine that the "defendant is not a danger to the safety of any other person or to the community." U.S.S.G. §1B1.13.

A.   <u>Wood is not eligible for compassionate release</u>.

A sentence reduction must be "consistent with applicable policy statements issued by the Sentencing Commission."   18 U.S.C. § 3582(c)(1)(A).   Thus, the statute directs that the Commission, not the judiciary, adopt policies regarding "what should be considered extraordinary and compelling reasons for sentence reduction."   28 U.S.C. § 994(a)(2)(C) & (t). The Commission has fulfilled Congress's directive in U.S.S.G. §1B1.13, which limits "extraordinary and compelling reasons" to four categories: (1) the inmate's medical condition; (2) the inmate's age; (3) the inmate's family circumstances; and (4) other reasons "[a]s determined by the Director of the Bureau of Prisons."

Wood relies solely on the coronavirus pandemic, but he is not eligible for compassionate release on that basis.   Wood's concern is that he could contract coronavirus and the virus could jeopardize his health.   Yet, Wood has not contracted the illness, and his speculation is not enough to satisfy §1B1.13's criteria.   Aside from childhood asthma, Wood is a healthy 34-year-old man.

Similarly, Wood is not eligible for compassionate release based on the "other reasons" category.   With respect to that category, the Bureau of Prisons has issued Program Statement 5050.50, which contains standards for eligibility that are related to but somewhat more extensive than the first three categories.   Wood has not shown that he satisfies those standards, and the coronavirus pandemic does nothing to change that.   *See United States v. Heromin*, No. 8:11-cr-550-T-33SPF, 2019 WL 2411311, *2 (M.D. Fla. June 7, 2019) ("Without his medical provider corroborating either of these requirements, Heromin has not shown a foundation for compassionate release based on his medical condition.").   Wood's age, 34, is certainly not

advanced.   And, his health issues -- allegedly related to childhood asthma[1] – is capable of management by BOP.   Wood's speculation that prior issues with asthmas will place him at higher risk of contracting COVID-19, is just that – speculation.

Further, because Congress has mandated that "other reasons" for eligibility be determined by the Bureau of Prisons, not the judiciary, the Court lacks the authority to grant compassionate release based on the threat to Wood posed by the coronavirus pandemic.   *See Raia*, 2020 WL 1647922 at *2 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ."); *United States v. Lynn*, No. 89-0072-WS, 2019 WL 3805349, *4-5 (S.D. Ala. Aug. 13, 2019); *United States v. Shields*, No. 12-cr-00410-BLF-1, 2019 WL 2359231, *4 (N.D. Cal. June 4, 2019); *United States v. Willingham*, No. CR113-010, 2019 WL 6733028, *2 (S.D. Ga. Dec. 10, 2019); *United States v. McGraw*, No. 2:02-cr-00018-LJM-CMM, 2019 WL 2059488, *2 (S.D. Ind. May 5, 2019); *United States v. Washington*, No. 5:13-020-DCR, 2019 WL 6220984, *2 (E.D. Ky. Nov. 21, 2019); *United States v. Willis*, 382 F. Supp. 3d 1185, 1187 (D.N.M. 2019); *United States v. Ebbers*, No. (S4) 02-CR-1144-3 (VEC), 2020 WL 91399, *4 (S.D.N.Y. Jan. 8, 2020); *United States v. Overcash*, No. 3:15-cr-263-FDW-1, 2019 WL 1472104, *2 (W.D.N.C. Apr. 3, 2019); *United States v. York*, Nos. 3:11-CR-76; 3:12-CR-145, 2019 WL 3241166, *4 (E.D. Tenn. July 18, 2019).

Even if such judicial authority existed, the coronavirus pandemic does not qualify as the type of defendant-specific reason permitting compassionate release for a defendant like Wood.

---

[1] No other reports of health issues are raised in the current motion or noted prior to sentencing. *See* DN 14.

As of today, May 14, 2020, FCI Elkton has 2,368 total inmates (1,955 at FCI; 402 at FSL).   *See*

*https://www.bop.gov/locations/institutions/elk/*.   Of the inmate population, there are 74 with

positive tests, nine deaths, and 48 who have recovered.   *See https://www.bop.gov/coronavirus/*.

Wood has not contracted coronavirus, he is healthy, and professionals are available at the FCI

Elton to tend to his medical needs.   The Bureau of Prisons' precautionary measures have also

reduced the risk from coronavirus to Wood and other inmates.   If coronavirus, standing alone,

qualified as an "extraordinary and compelling reason[]" for relief, there would be no limiting

principle: any defendant, no matter his actual risk from coronavirus, would be immediately

eligible for compassionate release.   Nothing in the statute or U.S.S.G. §1B1.13 supports that

unbounded interpretation.

       B.      <u>Relief is improper considering the factors set out in 18 U.S.C. § 3553(a).</u>

       Even when a defendant is statutorily eligible for a sentence reduction based on an

"extraordinary and compelling reason," compassionate release is not necessarily appropriate.

Before ordering relief, courts must consider the factors set forth in 18 U.S.C. § 3553(a) and

determine that the "defendant is not a danger to the safety of any other person or to the

community." U.S.S.G. § 1B1.13.

       Here, "the nature and circumstances" of Wood's crime weighs against release.   18

U.S.C. § 3553(a)(1).   He was convicted of attempting to use the internet to entice a minor to

engage in sexual activity for which a person can be prosecuted.   He did so while in a position of

trust and authority (law enforcement official with mentoring role in youth program).   His efforts

eventually led to sexual activity with the young man, admittedly after the victim had reached the

age of majority.

Wood's "history and characteristics" likewise do not support relief.   18 U.S.C. §
3553(a)(1).   As noted above, Wood engaged in the criminal conduct while abusing his position
of authority and trust.   On the other hand, the United States has no information to indicate
disciplinary actions taken against Wood since his incarceration.   He has served a little over one
year of the imposed sentence, arriving at FCI Elkton on June 26, 2019. *See* DN 40-1.   The
relatively short time at FCI Elkton would not have afforded Wood the opportunity to complete
any sex offender treatment program, an important factor for rehabilitation and protection of the
public.   Wood already received the benefit of a below mandatory minimum sentence.   Further
reduction would not reflect the seriousness of his crimes, deter him from criminal activity, or
protect the public.   18 U.S.C. § 3553(a)(2).

In view of the sentencing factors, compassionate release would be improper here.   And,
there is nothing from which the Court can reliably conclude that Wood "is not a danger to the
safety of any other person or to the community," U.S.S.G. §1B1.13(2), which independently
precludes relief.

## CONCLUSION

The Court should deny Wood's motion.

Respectfully submitted,

RUSSELL M. COLEMAN
United States Attorney

/s/ *Jo E. Lawless*
Jo E. Lawless
Assistant United States Attorney
717 West Broadway
Louisville, Kentucky 40202
(502) 625-7065
Fax (502) 582-5097

10

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was sent to defense counsel on May 14, 2020, through the Court's ECF system.

/s/ *Jo E. Lawless*
Jo E. Lawless
Assistant United States Attorney

11